

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
07/27/2009

| | | |
|---|---|---|
| IN RE: | § | |
| MARVIN E. MOYE; dba JMW AUTO | § | CASE NO: 07-37770 |
| SALES, LTD; dba JMW AUTO SALES, LLC; | § | |
| dba JMW GROUP INVESTMENTS, LTD.; | § | |
| dba JMW AUTO TRANSPORT, LLC; dba | § | |
| JMW AUTO SALES; dba JMW RETAIL | § | |
| AUTO SALES, LTD., *et al* | § | |
|     Debtor(s) | § | |
| | § | CHAPTER 7 |
| | § | |
| LOWELL T CAGE | § | |
|     Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 08-3288 |
| | § | |
| WARREN WAITE JR., *et al* | § | |
|     Defendant(s) | § | |

## MEMORANDUM OPINION
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

     Marvin Moye and Joan Moye ("Mr. and Mrs. Moye") were used car dealers who became involuntary bankruptcy debtors.[1]. They then filed a voluntary bankruptcy petition in their own names. In this adversary proceeding, the chapter 7 Trustee seeks to avoid alleged post-bankruptcy petition transfers of used cars and/or retail installment agreements so that the Trustee can deliver title to consumers who have purchased the cars. The Trustee also seeks damages in the form of attorneys' fees for time spent attempting to resolve the issue. Evidence at the trial on March 10 included conflicting testimony, documents that contradict the testimony, and Mr. Moye's recantation of his statements in an Agreed Judgment that released him as a party to this adversary proceeding. But the evidence demonstrated that immediately prior to the commencement of these bankruptcy cases Mr. Moye and Mr. Waite scrambled to effect certain transfers from the Moye's used car business to Mr. Waite or his business Reliable Auto Rental and Sales (sometimes jointly referred to as "Waite/Reliable"). They attempted to transfer approximately $47,000 of value out of the Moye's used car business for consideration of approximately $32,000. The transactions were vaguely and inadequately defined and documented. Because the transactions were undefined, incomplete, and backdated to a date prior to the filing of the bankruptcy petitions and prior to the creation of a bankruptcy estate, the Court agrees with the Trustee that the existing titles to four vehicles contain false entries and are void. The Court has issued a final judgment to that effect. The Court will also issue an order for a hearing on attorneys' fees and damages.

---

[1] Involuntary petitions were filed against a number of their assumed names.

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

Timeline for Adversary Proceeding Cage v. Waite.



## I. FACTS AND ANALYSIS

A timeline is useful for understanding the facts:

A. Summary

For many years Mr. and Mrs. Moye (operating under a number of assumed names) sold used cars at retail. Prior to September 1, 2007, under the name JMW Auto Sales, Mr. and Mrs. Moye purchased four vehicles (the "Four Vehicles") at various auctions. The vehicle titles showed the transfer to JMW and therefore showed JMW as the owner of the vehicle. JMW obtained "floor plan" financing for these vehicles from two commercial lenders, AFC and DSC. The floor plan lenders took possession of the vehicle titles and held those titles until November 1, 2007. The vehicles were always titled in JMW while held by the floor plan lenders.

Between September 1, 2007, and October 12, 2007, JMW sold the Four Vehicles to four unrelated consumers who signed retail installment sale contracts that show JMW as the seller and financing party.[2] Subsequent to those sales, the customers remitted payments on the cars to JMW.[3] JMW did not have sufficient funds to pay the floor plan lenders to release the vehicles from its floor plan loan, and therefore JMW did not comply with the Texas Administrative Code which requires that the sale be recorded and a new title issued within 20 days showing the name

---

[2] Trustee Exhibits F through I.
[3] Agreed Judgment, document # 18. Also found as Trustee's Exhibit Q.

of the purchaser of the vehicle and the identity of the lien holder.[4]  JMW simply left the vehicle titles with the floor planners while it collected installment payments from the consumers.  Title to the vehicles, therefore, was not properly recorded.

Subsequent to the commencement of these bankruptcy cases, the Trustee reported that the JMW and the Moyes' books and records were incomplete and chaotic.  The Trustee reported that consumers could not obtain title to the vehicles that they had purchased and therefore had been unable to operate their vehicles.  As a result, consumers quit making monthly payments on the vehicles.  The Court ordered the Trustee to operate the business in chapter 7 to try to wind down its affairs by collecting notes, delivering titles, repossessing vehicles, *etc.*  In the course of operating the business, the Trustee eventually examined the transactions involving these Four Vehicles and learned that the vehicle titles had not been delivered to the purchasers.  The Trustee demanded return of the titles from Mr. Waite/Reliable.  When Mr. Waite/Reliable returned the titles, they showed Reliable as the vendee from JMW.

The Trustee believed that he could not register proper titles until he obtained a judgment declaring invalid the Waite/Reliable claim to ownership, and therefore he filed this adversary proceeding seeking a declaration that the existing titles are void.

B.   The October/November 2007 Transactions

Mr. Moye and Mr. Waite had worked with each other for many years in the used car business.  Mr. Moye testified that he was "out of trust" with his floor planners at the end of October, 2007.  He testified that on October 29 he agreed to sell the retail installment sale agreements to Waite/Reliable provided that Waite/Reliable would pay the floor plan lenders the amount of the floor plan liens.[5]  Mr. Moye testified that on October 29 he and Waite/Reliable agreed to the sale of the retail installment agreements, that on October 31, 2007, a few hours before the involuntary bankruptcy petition was filed against JMW, Mr. Waite delivered to Mr. Moye checks that would satisfy the floor plan lenders, and that on November 1, 2007, (subsequent to the filing of the involuntary bankruptcy petition, but allegedly an hour or so before Moye learned of the involuntary bankruptcy filing) Mr. Moye, on behalf of Waite/Reliable, delivered the checks to the floor plan lenders. Subsequently, the lenders delivered titles to Waite/Reliable instead of Mr. Moye.

Mr. Moye's testimony is contrary to the contemporaneous documents, is contrary to the Agreed Judgment entered in this adversary proceeding on his behalf by his counsel, is contrary to the Buy/Sell Agreement allegedly executed by the parties on October 29, and is contrary to Mr. Waite's testimony.

---

[4] *See* 43 Tex. Admin. Code § 8.144(e); Tex. Transp. Code §§ 501.0234, 501.071; Texas Department of Transportation Motor Vehicle Title Manual, Chapter 29: A dealer who sells a used car must apply, on behalf of the purchaser, for the registration of the vehicle and file the required documents necessary to transfer title within 20 working days of the date of sale.  The dealer must also remit any required motor vehicle sales tax to the county tax assessor-collector.

[5] Recording of trial at 1:57:20.

The original retail installment agreements were never introduced into evidence.  The Trustee testified that he cannot locate them in the JMW records, and Mr. Waite did not produce the originals.  The Trustee did introduce into evidence photocopies of the retail installment agreements, but those photocopies do not show any assignment from JMW to Reliable Auto Rental and Sales or Mr. Waite.  Therefore, the testimony that JMW transferred the retail installment agreements to Waite/Reliable is unsubstantiated.

The vehicle titles show an assignment to Waite/Reliable on October 29, but those documents are backdated.  The vehicle titles show a transfer from JMW to Reliable, then to the respective purchasers on October 29. However, JMW's floor plan lenders held the titles until November 1, and until that date the vehicles were titled in JMW.[6]  Mr. Moye testified that he obtained possession of the vehicle titles on November 1, 2007, signed them in blank, and delivered them to Waite/Reliable.  Therefore the notations on the titles that the vehicles were transferred to Reliable on October 29, 2007, is a backdated notation.

Mr. Moye's testimony is contrary to the Agreed Judgment entered by Mr. Moye's counsel in this adversary proceeding to release Mr. Moye as a defendant.  In that Agreed Judgment, Mr. Moye confirms that the vehicle titles should never have shown Reliable or Waite as the owner of the vehicles.

> The certificates of title and applications turned over by Waite are incorrect because Reliable Auto Rental and Sales is incorrectly identified as the purchasers, and Reliable is identified as the dealer conveyer of the four vehicles to [the consumer purchasers] Plank, Silva, Cruz, and Adame.  The titles should have reflected JMW Auto Sales as the dealer and lienholder and JMW Auto Sales' customer as the buyer.[7]

Mr. Moye's testimony is contrary to Waite/Reliable Exhibit 1 introduced into evidence by Waite/Reliable's attorney at trial.  That document purports to be the handwritten Buy/Sell Agreement that Mr. Moye and Mr. Waite allegedly signed on October 29, 2007.[8]  Contrary to Mr. Moye's testimony (*i.e.* his testimony that the sale by JMW to Mr. Waite/Reliable was a sale of retail installment contracts[9]), the document states, and Mr. Waite's testimony states, that Waite/Reliable purchased the vehicles, not the retail installment contracts.[10]

Finally, Mr. Moye's testimony is contrary to Mr. Waite's testimony.  Mr. Waite's Exhibit 1 states that he purchased vehicles, not retail installment agreements.

---

[6] Trustee Exhibit A through D.  It is also undisputed that JMW purchased the automobiles in four transactions all prior to September 1, 2007.

[7] Agreed Judgment, document # 18. Also found as Trustee's Exhibit Q.

[8] The document contains 3 dates.  Two of those dates are "10-29-07".  The third date, at the top of the page, is "10-29-08".  No one can explain who wrote that date on the agreement or when it was written.  Counsel for Mr. Waite has agreed to supply the original of that document for forensic examination, but has not done so.  *See* docket # 31.

[9] Recording of trial at 2:25:15.

[10] Recording of trial at 4:02:11.

C. JMW and Moye Had No Legal Authority to Sell

1. Vehicles Did Not Belong to JMW

JMW had no authority to sell the vehicles to Mr. Waite/Reliable on October 29 because JMW had previously sold the vehicles to consumers. JMW did not own the vehicles on October 29.

2. The Vehicles Belonged to the Bankruptcy Estate as of October 31, 2007

In addition, because the involuntary bankruptcy petition was filed October 31, JMW had no authority to transfer the titles after that date. The purported transfer by documentation of the title on November 1, 2007, (backdated to October 29, 2007) was simply ineffective.

Bankruptcy Code § 303(b) provides that an involuntary bankruptcy case is commenced by the filing of an involuntary bankruptcy petition. Section 541 provides that the commencement of a bankruptcy case under section 303 creates a bankruptcy estate which includes all property rights of the debtor as of the commencement of the case. Because the vehicles were still titled in JMW as of October 31 (subject to the floor plan lien) JMW/Moye could not transfer them as of November 1. The testimony concerning the alleged Buy/Sell Agreement effective October 29 is simply not credible for the reasons set forth above.

3. Transfer of Possession of the Titles and Collection of the Retail Installment Agreements Violates the Automatic Stay

Bankruptcy Code §362(a) provides that a petition filed under section 303 operates as a stay, applicable to all entities, of any action to take possession or control of property of the estate. Unless the bankruptcy court grants retroactive relief from the stay, actions taken in violation of the stay are void, regardless of whether the parties had knowledge of the existence of the stay.[11]

D. Prospects for Profit at the Expense of the Estate and Its Creditors

There was considerable discussion at the trial concerning what Waite allegedly paid for the vehicles, or the retail installment agreements. All that is clear is that Waite paid only the floor plan loan payoff for these vehicles. The chart below shows the amount Mr. Waite/Reliable paid and the principal amount due on the retail installment agreements on those vehicles:

---

[11] 3 COLLIER ON BANKRUPTCY ¶ 362.11 (Alan. N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

| Vehicle | Retail Price[12] | Floor Plan Payoff[13] |
|---|---:|---:|
| 2004 Dodge | $10,455.91 | $6,455.95 |
| 2005 Ford Mustang | 13,286.59 | 9,607.02 |
| 2004 Ford F-150 | 12,536.74 | 9,783.51 |
| 2001 Chevrolet C1500 | 10,445.91 | 5,825.35 |
| Total | $46,725.15 | $31,671.83 |

Because the amount paid by Mr. Waite/Reliable is substantially less than the principal amount due under the retail installment agreements, it is clear that Waite/Reliable was obtaining value substantially more than the consideration that he was allegedly giving by payment of the floor plan liens.

## II.   CONCLUSION

For reasons set forth above, by separate Final Partial Judgment issued this date, the alterations on the titles of the Four Vehicles that purport to show anyone other than JMW (the bankruptcy estate) as the owner of the vehicles are void, and the Trustee is directed to take such steps as may be necessary to transfer the vehicles to consumer purchasers, if any, who complete payments under the retail installment agreements or otherwise to dispose of the property of the estate.

The Court will schedule a status conference to address the Trustee's request for damages.

SIGNED 07/27/2009.

_Wesley W. Steen_
Wesley W. Steen
United States Bankruptcy Judge

---

[12] Trustee's Exhibits E through H.  In addition to the principal amounts shown as due in the table, the retail installment agreements call for interest ranging from 16.64% to 21.475%.  Therefore, the amounts shown as "retail price" should represent net present value.

[13] Waite/Reliable Exhibit 1.  *See also* Trustee Exhibit O.